# In the United States Court of Federal Claims

No. 18-120V

(Filed: March 6, 2019)[1]

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | |
| | * | |
| K.G., | * | National Childhood Vaccination |
| Petitioner, | * | Injury Act of 1986, 42 U.S.C. |
| | * | §§ 300aa-1 et seq.; Statute of |
| v. | * | Limitations; Equitable Tolling; |
| | * | Mental Incapacity; Savings |
| SECRETARY OF HEALTH AND | * | Clause; Appointment of Legal |
| HUMAN SERVICES, | * | Guardian. |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

Zachary James Hermsen, Whitfield & Eddy Law, 699 Walnut Street, Suite 2000, Des Moines, IA 50309, for Petitioner.

Joseph H. Hunt, C. Salvatore D'Alessio, Catharine E. Reeves, Heather L. Pearlman, and Voris Edward Johnson, U. S. Department of Justice, Torts Branch, Civil Division, P.O. Box 146, Benjamin Franklin Station, Washington, DC 20044-0146, for Respondent.

## OPINION AND ORDER

**WILLIAMS**, Senior Judge.

This Vaccine Act case presents a novel issue of statutory interpretation: whether the statute of limitations may be tolled during the timeframe when a petitioner who lacks mental capacity, has a legal guardian. The Special Master determined that there was no basis to toll the statute of limitations, finding that while Petitioner herself may have been unable to file suit, Petitioner's guardian had the capacity to sue on her behalf. This Court sustains the Special Master's decision.

---

[1] Pursuant to Vaccine Rule 18 of the Rules of the United States Court of Federal Claims, the Court issued its Opinion under seal to provide the parties an opportunity to submit redactions. The parties did not propose any redactions. Accordingly, the Court publishes this Opinion.

**Background**[2]

On October 12, 2011, Petitioner, a 48-year old woman, received the flu vaccine in preparation for a knee replacement at Mercy Medical Clinic in Johnston, Iowa. After the surgery on November 21, 2011, Petitioner reported tingling sensations in her toes as well as pain, which her medical providers attributed to the recent procedure. Dec. *3-4. In December 2011, Petitioner's primary physician observed no other symptoms, but in the months following, Petitioner reported "decreased sensations" in her lower extremities, instability in her left knee and difficulty walking. Dec. *5. In February 2012, Petitioner's physician ordered an electromyography test (EMG) to "rule out something like a neuropathy or some other sort of nerve injury . . . ." Dec. *6. The EMG was performed on May 7, 2012, and produced abnormal findings of "prolonged distal latency" in her left tibial nerves. Id. (citing Ex. 16, at 39).

In mid-May, after reporting hypersensitivity and lack of sensation at the bottom of both feet, burning sensations in her legs, and abnormal sensations in her fingers, Petitioner was referred to a neurology specialist, whose findings suggested a possible "peripheral nerve disease." Dec. *6-7 (citing Ex. 7F, at 3232). Over the summer of 2012, these symptoms worsened, and others appeared – slurred speech and depression as well as impaired judgment due to "the enormous amounts of alcohol and prescription medications she was consuming." Pet'r's Mot. 5; Ex. 2, at 118, 132, 169.

On November 9, 2012, Petitioner fell in her home and was transported to the hospital. Ex. 2, at 113. Records of her commitment indicate that Petitioner was unable to speak and was hallucinating, which required her providers to use wrist restraints, a ventilator, and a feeding tube. At discharge on January 11, 2013, Petitioner's diagnosis included Chronic Inflammatory Demyelinating Polyneuropathy ("CIDP"). Upon returning home, Petitioner continued to struggle with substance abuse, and while Petitioner's mental health generally deteriorated over the next four months, the record of a February 11, 2013 follow-up appointment with her neurologist noted that Petitioner was alert and that her "[j]udgment and insight were intact and appropriate." Ex. 18, at 61-62.

On May 26, 2013, Petitioner was again hospitalized after being found unconscious on the floor of her home. On June 21, 2013, she was transferred to an in-patient facility, where she remained against her will and "under constant medical supervision for the next three and a half years, during which time she continued exhibiting significant mental incapacity." Pet'r's Mot. 8. In the Fall of 2013, Petitioner was diagnosed with Korsakoff's Amnesia, "a syndrome of anterograde and retrograde amnesia with confabulation associated with alcoholic or nonalcoholic polyneuritis." Dec. *11 & n.5.

On July 17, 2013, shortly after Petitioner moved into the in-patient facility, Petitioner's sister was granted a power of attorney over Petitioner's health care decisions by an Iowa state court. Ex. 3, at 780-83. On March 24, 2014, with the entire family's agreement, Petitioner's sister was appointed her guardian and conservator by the Iowa District Court for Poweshiek County.

---

[2] These facts are derived from the Special Master's decision dismissing Petitioner's case, K.G. v. Sec'y of Health & Human Servs., No. 18-120V, 2018 U.S. Claims LEXIS 1523 (Fed. Cl. Aug. 17, 2018) ("Dec."), as well as the Appendix to Petitioner's Motion for Review.

Dec. *11; Ex. 4, at 16-17; Ex. 21 ¶ 23; Ex. 22 ¶ 10; Ex. 23 ¶ 12. According to the "Notice of Your Rights" given to Petitioner when her sister became her guardian and conservator, these designations gave Petitioner's sister the authority to make decisions with respect to Petitioner's physical wellbeing and otherwise and "to sue and defend any claim by or against [Petitioner] . . . ." Ex. 4, at 17, 3. The order granting guardianship and conservatorship to Petitioner's sister stated that there was "clear and convincing evidence and good cause for the appointment of a guardian and conservator of the proposed ward, all without limitations." Ex. 4, at 16.

During assessments at the in-patient facility, Petitioner consistently blamed her sister "for all her problems and sadness," for making "[her] room [her] prison," and for telling her sons that "she [had] brain problems from drinking so much." Ex. 13D, at 1398; Ex. 17, at 4, 10, 21. Petitioner's sister testified in her declaration that her appointment as guardian caused a strain on their relationship that ultimately caused her to stop "acting as [Petitioner's] guardian and conservator [because it] became too much . . . to personally handle." Ex. 21 ¶ 24. Nevertheless, Petitioner's sister continued to act as her guardian and conservator. See also, Ex. 4, at 134-36; 139-42. In an assessment on May 10, 2016, Petitioner "finally showed medical evidence of cognitive improvement." Pet'r's Mot. 11. On August 29, 2016, the Iowa District Court terminated Petitioner's sister's guardianship and conservatorship, and by November 2016, Petitioner had returned home.

**Procedural History**

On January 24, 2018, Petitioner, who no longer had a guardian, filed a claim for compensation under the National Vaccine Injury Compensation Program, alleging that she developed Guillain-Barre Syndrome ("GBS") and/or Chronic Inflammatory Demyelinating Polyneuropathy ("CIDP") as a result of the influenza vaccine she received on October 12, 2011. Petitioner admitted that her claim, filed more than six years after onset of her symptoms, was untimely under the Vaccine Act's three-year statute of limitations. However, Petitioner argued that because she was mentally incapacitated from November 9, 2012, to May 10, 2016, the statute of limitations should have been equitably tolled for that time period – some three and one-half years.

The Special Master determined that the statute of limitations began to run "no later than February 2012," when Petitioner first experienced leg numbness, a symptom consistent with CIDP, a slowly progressive autoimmune disease. Dec. *23 ("Thus, all things being equal, this case should have been filed by mid-February 2015 . . . ."); see Dorland's at 1491. The Special Master further determined that Petitioner was "sufficiently mentally impaired so as to stop the running of the limitations period" on May 26, 2013, when Petitioner was hospitalized after being found unresponsive at home. Dec. *24-25. The Special Master rejected Petitioner's argument that she became mentally incapacitated on November 9, 2012, finding that, while Petitioner's mental health was a concern by that date, her release from the hospital and positive mental health assessment at the February 2013 follow-up appointment demonstrated that her mental health had not yet declined to the point where she was fully incapacitated. Id.

The Special Master then determined that the limitations period resumed on March 24, 2014, when an Iowa state court appointed Petitioner's sister as her legal guardian and conservator, because these appointments gave Petitioner's sister the authority "'to sue and defend any claim by or against [Petitioner] . . . .'" Dec. *26 (quoting Ex. 4, at 3). The Special Master cited the "Notice

3

of Your Rights" Petitioner received and relied upon language in that Notice that mirrored Iowa Code § 633.646, the statute setting forth the powers of a conservator. This Iowa Code provision stated that "[the] conservator shall have the full power, without prior order of the court, with relation to the estate of the ward . . . to sue on and defend claims in favor of, or against, the ward or the conservator." Iowa Code § 633.646 (2018). The Special Master determined that, despite Petitioner's continued mental incapacity, tolling was no longer appropriate once her guardian was appointed, because she "did have a legal representative for a substantial period," who "had full authority to bring a legal claim on her behalf." Dec. *28. The Special Master concluded that the petition filed on January 24, 2018, was untimely, as the three-year statute of limitations expired in December 2015, even tolling for the period from May 26, 2013 until March 24, 2014, when Petitioner was mentally incapacitated without a guardian. Id.[3]

In her Motion for Review, Petitioner argues that the statute of limitations should be tolled for the entire period that she was mentally incapacitated - - even when she had a guardian - - and that the Special Master erred by restarting the limitations clock when Petitioner's sister became her court-appointed legal guardian. Petitioner submits that, even if tolling generally ends once a guardian is appointed, tolling should nevertheless continue in this case, because Petitioner's guardian could not effectively communicate with Petitioner or "identify the need to file a Vaccine Act claim . . . ." Pet'r's Mot. 20. Petitioner cites Petitioner's "severe psychological decline, including impaired memory, impaired logical reasoning abilities, communication difficulties, and a paranoid distrust toward her guardian." Id.

## Discussion

In Vaccine Act cases, the Court of Federal Claims may: (1) uphold the findings of fact and conclusions of law and sustain the special master's decision; (2) set aside any of the findings of fact or conclusions of law "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law" or (3) "remand the petition to the special master for further action in accordance with the court's direction." 42 U.S.C. § 300aa-12(e)(2)(A)-(C) (2012); Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1277 (Fed. Cir. 2005); Saunders v. Sec'y of Dep't of Health & Human Servs., 25 F.3d 1031, 1033 (Fed. Cir. 1994).

Section 11(b)(1)(A) of the Vaccine Act provides that:

> any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table may. . . file a petition for compensation under the Program.

42 U.S.C. § 300aa-11(b)(1)(A). The Vaccine Act defines "legal representative" as "a parent or an individual who qualifies as a legal guardian under State law." Id. § 300aa-33(2).

---

[3] There is no dispute that Petitioner was no longer mentally incapacitated on May 10, 2016, the date of her first medical test demonstrating cognitive improvement. Pet'r's Mot. 2.

4

Section 16(a)(2) of the Act establishes the limitations period within which the person "who has sustained a vaccine-related injury" or that person's legal representative must file a claim, stating:

> [I]f a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury.

Id. § 300aa-16(a)(2).

This statute of limitations is subject to equitable tolling. Cloer v. Sec'y of Health & Human Servs., 654 F.3d 1322, 1343-44 (Fed. Cir. 2011) (en banc). As the United States Court of Appeals for the Federal Circuit recognized in Cloer, the Vaccine Act's limitations period may be tolled where "extraordinary circumstance[s]," such as fraud or duress, block a claimant from filing on time. Id. at 1344-45 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

In his decision dismissing the petition as untimely, the Special Master did not reach the issue of whether Petitioner's claimed mental incapacity constituted the type of extraordinary circumstance under Cloer that would warrant equitable tolling of the Vaccine Act's statute of limitations. The Special Master, instead, determined that assuming arguendo that tolling was available due to Petitioner's mental incapacity, the petition was still time-barred because once Petitioner's guardian was appointed, Petitioner had a legal representative who "had full authority to bring a legal claim on her behalf." Dec. *28.

Petitioner argues that the Special Master erred by not continuing the tolling period for the duration of her mental incapacity after the appointment of her legal guardian. This Court disagrees. Assuming, as the Special Master did, that Petitioner had a mental illness that constituted an extraordinary circumstance that prevented her from pursuing her claim herself, the appointment of Petitioner's sister as her legal guardian removed that obstacle.[4]

The Vaccine Act expressly grants the statutory right to bring a claim to the legal representative of a disabled person who allegedly has sustained a vaccine-related injury. 42 U.S.C. § 300aa-11(b)(1)(A). The Act defines a "legal representative" as "a parent or an individual who qualifies as a legal guardian under State law." Id. § 300aa-33(2). Here, Petitioner's sister was duly appointed as Petitioner's legal guardian by the Iowa District Court for Poweshiek County and was granted the power to sue and defend actions. Ex. 4, at 16-17; Iowa Code § 633.646. As such, Petitioner's sister qualified as her legal representative under the Vaccine Act.

Under the Act's statute of limitations, a disabled person's legal representative must file a petition before "the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." 42 U.S.C. § 300aa-16(a)(2). Once Petitioner's sister became her legal guardian, she possessed a statutory right to file

---

[4] The Special Master assumed arguendo that Petitioner had demonstrated the requisite mental incapacity to trigger tolling. Such mental incapacity would have rendered Petitioner "disabled" within the meaning of the Vaccine Act.

suit on Petitioner's behalf, and there was no longer any impediment preventing Petitioner from suing or any "extraordinary circumstance" warranting equitable tolling. As such, the Special Master correctly determined to end the tolling period once Petitioner's sister became her legal guardian on March 24, 2014.

Petitioner urges this Court to follow what she characterizes as the "overwhelming majority of jurisdictions" that have decided that tolling based on mental incapacity should continue even after the appointment of a legal guardian. Pet'r's Mot. 16-17. The cases Petitioner cites are distinguishable however, as the statutes of limitations in those cases contain savings clauses. By its terms, a savings clause tolls or suspends the statute of limitations for certain classes of incompetent individuals - - typically minors and mentally incapacitated persons - - until the incompetency is removed. See, e.g., Whalen v. Certain-Teed Prods. Corp., 134 S.E.2d 528, 529-30 (Ga. Ct. App. 1963) (where the savings clause, Ga. Code Ann. § 3-801, provided that "[i]nfants, idiots, or insane persons, or persons imprisoned, who are such when the cause of action shall have accrued, shall be entitled to the same time, after the disability shall have been removed, to bring an action, as is prescribed for other persons"); Tzolov v. Int'l Jet Leasing, Inc., 283 Cal. Rptr. 314, 316-17 (Cal. Dist. Ct. App. 1991) (where the savings clause, Cal. Civ. Proc. § 352, provided that for persons lacking legal capacity at the time of accrual of the claim, "the time of the disability is not part of the time limited for the commencement of the action"); Talley by Talley v. Portland Residence, Inc., 582 N.W.2d 590, 591 (Minn. Ct. App. 1998) (where the statute of limitations, Minn. Stat. § 541.15(a), provided that insanity "existing at the time when a cause of action accrued or arising anytime during the period of limitation, shall suspend the running of the period of limitation until the same is removed; provided that such period . . . , shall not be extended for more than five years, nor in any case for more than one year after the disability ceases"). Or a savings clause may provide a different limitations period for a person with a legal disability, which is triggered after the disability is removed. See, e.g., Freeman v. Alex Brown & Sons, Inc., 73 F.3d 279, 281 (10th Cir. 1996) (where the savings clause, Okla. Stat. tit. 12, § 96, provided that if "a person entitled to bring an action . . . be, at the time the cause of action accrued, under any legal disability, every such person shall be entitled to bring such action within one (1) year after such disability shall be removed").

In the cases cited by Petitioner, the courts relied on the express text of the savings clauses in holding that the appointment of a legal guardian did not end tolling but that a different statutorily prescribed circumstance did - - the removal of the incapacity. Those courts did not rely upon traditional notions of equity that would be implicated in tolling the Vaccine Act's limitations period here, but instead relied on principles of law - - the express language of the savings clauses themselves - - in suspending the running of the statute of limitations until the claimants regained mental capacity.[5]

---

[5] Two of the cases Petitioner cites, recognizing that the savings clause only covered persons who were incompetent at the time the cause of action accrued, relied on equitable principles to toll the limitations period for persons who allegedly became incompetent after accrual and were not covered by the savings clause. See, e.g., Pardy v. United States, 548 F. Supp. 682, 683 (S.D. Ill. 1982); Unkert v. Gen. Motors Corp., 694 A.2d 306, 309 (N.J. Super. Ct. App. Div. 1997).

In stark contrast to the statutes Petitioner cites in which savings clauses dictate the operation or suspension of the limitations period, the Vaccine Act's statute of limitations lacks a savings clause. The Vaccine Act does not provide a statutory mechanism for suspending the limitations period for a disabled person and restarting the limitations period once his disability is removed, or for a minor until he comes of age. Instead, the Act empowers a legal representative to sue on behalf of a disabled person or a minor as of the accrual of the cause of action or once a disability is demonstrated.

Equitable tolling is not appropriate in instances where a statutory limitations bar is structured to either encompass or withhold the relief tolling would otherwise effect. In Cloer, the Federal Circuit declined to apply equitable tolling where the petitioner was unaware of the causal link between her injury and the administration of a vaccine until after the limitations period had run. As the Cloer majority found, a Vaccine Act claim accrues, and the limitations period begins, upon the "occurrence of the first symptom or manifestation of onset of a vaccine-related injury" and not upon awareness of the causal link between an injury and administration of a vaccine. Cloer, 654 F.3d at 1338-40. In Cloer, the Court declined to apply equitable tolling recognizing that doing so would have granted "the same relief as a matter of equity that Congress has withheld from all petitioners as a matter of law." Id. at 1344. Here, in a similar vein, equitable tolling is unavailable as the language of the Vaccine Act itself addresses the circumstance for which tolling is sought; the Act accommodates a disabled person's inability to file suit within the statutory period by giving the guardian the right to sue on his behalf.

Finally, Petitioner argues that even if equitable tolling is generally not available under the Vaccine Act once a guardian is appointed, the doctrine should be applied here because Petitioner's guardian could not effectively communicate with Petitioner and identify the need to file a Vaccine Act claim. Petitioner cites her "severe psychological decline, including impaired memory, impaired logical reasoning abilities, communication difficulties, and a paranoid distrust toward her guardian." Pet'r's Mot. 19. Petitioner continues that to end tolling "'would ignore the fact that so long as the injured party remains incompetent, he is unable to assist in the preparation and presentation of his case.'" Id. at 17 (quoting Unkert v. Gen. Motors Corp., 694 A.2d 306, 310 (N.J. Super. Ct. App. Div. 1997)). However, the language of the Vaccine Act presumes that the legal representative, unassisted by the injured person, will file the petition and pursue the case for the minor (often an infant), disabled person or deceased person. By granting a legal guardian the statutory right to file a claim on a disabled person's behalf, the Vaccine Act envisions that the injured party may not be able to assist his or her legal guardian, as the status of injured claimants for whom guardians may sue - - minors, disabled, and deceased individuals - - would as a practical matter foreclose such assistance. 42 U.S.C. § 300aa-11(b)(1)(A).

According to the Act's legislative history, Congress anticipated that "legal representatives will be parties in the filing and processing of most petitions for compensation" because most individuals injured by vaccines are children, who are unable to assist their parent or legal guardian in bringing their own Vaccine Act claim. H.R. Rep. No. 99-908, at 31 (1986); accord Somosot on behalf of R.D.S. v. Sec'y of Health & Human Servs., 118 Fed. Cl. 687, 693-94 (2014) (affirming Special Master's dismissal of claim filed by parents on behalf of seven-year-old child as time-barred because onset of first symptom occurred six years prior to filing).

7

In sum, the circumstances of this case and Petitioner's inability to communicate with her guardian do not constitute grounds to toll the statute of limitations.[6]

### Conclusion

The Court denies Petitioner's Motion for Review and sustains the decision of the Special Master.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Senior Judge**

---

[6] The Iowa court found that Petitioner's sister was fully qualified to serve as Petitioner's guardian and conservator. Petitioner stated that the deterioration of her relationship with her sister "should not be interpreted as a criticism of [her sister's] work on [her] behalf." Pet'r's Suppl. Resp. Br. 12 n.3. Further, Petitioner represented that "[m]edical records and affidavits filed in this case largely depict [Petitioner's sister] as a concerned and dedicated sister who struggled with [Petitioner's] mental deterioration, just as [Petitioner's] husband and children did." Id.